51 CCPA

**Application of Bernard L. ZENITZ.**

**Patent Appeal No. 7142.**

United States Court of Customs
and Patent Appeals.
July 9, 1964.

Laurence & Laurence, Washington, D. C. (Dean Laurence, Herbert I. Sherman, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

WORLEY, Chief Judge.

Zenitz appeals from the affirmance by the Board of Appeals of the rejection of claims 3, 5, 9 through 12 and 21 of his patent application.[1]

The appellant deals with chemical compounds described as 10-piperidinoalkylene derivatives of trifluoromethyl phenothiazines which are said to be useful as "hypotensive agents, antinauseants, antipyretics and sedatives." Claim 3 reads:

"3. A pharmacologically acceptable acid-addition salt of a compound having the formula

wherein Y represents lower-alkylene containing at least two carbon atoms separating the nitrogen atoms and R represents hydroxy-lower-alkyl."

The references are:

| | | | |
|---|---|---|---|
| Ullyot | 2,921,069 | January 12, 1960 | (filed April 9, 1956) |
| Cusic et al. | 2,926,164 | February 23, 1960 | (filed August 1, 1956) |
| Gulesich et al. | 2,928,767 | March 15, 1960 | (filed July 17, 1957) |
| Belgian Patent | 551,400 | March 29, 1957 | |
| Craig et al. | J.Org.Chem., Vol. 22, pages 709–11 (June 1957) | | |

Cusic, the primary reference, discloses compounds identical to those claimed except for a chloro (Cl) substituent in place of the trifluoromethyl (CF₃) substituent in the claimed compounds. The secondary references establish that prior to the filing date of Zenitz's application the art was fully aware of the substitution of Cl and CF₃ potentiating groups in phenothiazines analogous to those now claimed by Zenitz.

The examiner held, and the board agreed, that the substitution of CF₃ for Cl in the phenothiazines disclosed by Cusic, would be obvious to one of ordinary skill in the art.

Zenitz contends that the Cusic, Gulesich and Ullyot patents are not available as

1. Serial No. 746,615, filed July 7, 1958.

references for an obviousness rejection under Section 103 because they issued on applications which, although filed earlier than his, were copending therewith. Zenitz maintains that he could not have been aware of the Cusic or Gulesich disclosures at the time he filed his application.

■ This court has held in a number of decisions that a United States patent speaks for all it discloses as of its filing date, even when used in combination with other references. In re Kander, 312 F.2d 834, 50 CCPA 928; In re Gregg, 244 F.2d 316, 44 CCPA 904; In re Seid, 161 F.2d 229, 34 CCPA 1039.

■■ In re Harry, 333 F.2d 920, 51 CCPA, ——, decided concurrently herewith, holds that 35 U.S.C. § 103 is in pari materia with 35 U.S.C. § 102(e) and points out that the latter section was intended to enact the rule of Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651, wherein the court said:

"* * * The delays of the patent office ought not to cut down the effect of what has been done. The description shows that Whitford was not the first inventor. Clifford had done all that he could do to make his description public. He had taken steps that would make it public as soon as the Patent Office did its work, although, of course, amendments might be required of him before the end could be reached. We see no reason in the words or policy of the law for allowing Whitford to profit by the delay and make himself out to be the first inventor when he was not so in fact, when Clifford had shown knowledge inconsistent with the allowance of Whitford's claim. * * *"

Although in Milburn, Clifford disclosed the same invention claimed by Whitford, the criterion was that Clifford had shown knowledge inconsistent with the allowance of Whitford's claim. That such knowledge need not be limited to a disclosure of the *identical invention* is

shown by a later decision of the Supreme Court, Detrola Radio & Television Corp. v. Hazeltine Corp., 313 U.S. 259, 269, 61 S.Ct. 948, 952, 85 L.Ed. 1319 (1941) wherein the Court states:

"We conclude that Wheeler accomplished an old result by a combination of means which, singly or in similar combination, were disclosed by the prior art and that, notwithstanding the fact he was ignorant of the pending applications which antedated his claimed date of invention and eventuated into patents, he was not in fact the first inventor, since his advance over the prior art, if any, required only the exercise of the skill of the art."

The question is not what prior art Zenitz was *aware of* at the time he made his invention, but whether his invention would be obvious in view of the *state of the art at the time it was made*.

We therefore proceed to the question whether the differences between Zenitz's invention and the state of the art at the time the invention was made, here assumed to be Zenitz's filing date, are such that the subject matter as a whole would have been obvious to a person having ordinary skill in the art to which said subject matter pertains.

Zenitz submitted affidavits by Wylie and by Luduena to show that his compounds have unexpected properties. The affidavits compare the tranquilizing activity and hypotensive effect of hydroxy and hydroxypropyl piperidyl propyl *trifluoromethyl* phenothiazine derivatives of Zenitz with the corresponding *chloro* compounds of Cusic. The examiner allowed Zenitz's claims to the hydroxy but not to the hydroxy propyl derivatives. Claims 3, 9, 10 and 11 on appeal are drawn to those hydroxy propyl derivatives. Claims 5, 12 and 21, however, are drawn to compounds having an acyloxy-lower-alkyl substituent, e. g. an acetate. As to the latter compounds the examiner said:

"* * * Note also that appellant has not compared the instant com-

pounds against those of Cusic et al. shown to have *particularly good* tranquilizing activity, viz. the acetates * * *."

As to those compounds which have been compared, the Luduena affidavit confirms the following conclusion of Wylie:

"Moreover, I have noted that not only are the trifluoromethyl compounds considerably more active as tranquilizers and sedatives than the corresponding chloro and unsubstituted compounds as shown above but also show considerably less undesirable side effects, such as a hypotensive effect, making them superior with respect to decreased side effects than either the corresponding chloro compounds or the unsubstituted compounds. A hypotensive effect alone is useful in compounds that are to be used specifically to lower the blood pressure, but when this property is also possessed by compounds used as tranquilizers or sedatives, it is regarded as a serious side-effect which can cause other side-effects such as dizziness or blurring of vision. Its minimization or complete elimination in compounds to be used as sedatives and tranquilizers is, therefore, to be desired."

The examiner considered the affidavits and said:

"* * * Patentability has been consistently urged during prosecution upon this newly introduced "surprising separation of hypotensive and tranquilizing properties" which was not disclosed in the specification as filed. The specification at page 21 merely indicates that results indicate their use as *hypotensive agents,* antinauseants, antipyretics and sedatives. * * *"

Since the separation of hypotensive from tranquilizing effect was not originally disclosed, the examiner, citing In re Stewart, 222 F.2d 747, 42 CCPA 937,

held that Zenitz could not now rely on that effect as a ground for establishing unobviousness. The board agreed.

A case much in point is Westmoreland Specialty Co. v. Hogan, 167 F. 327, CCA 3 (1909). The patent there involved a celluloid top for a dredge for holding salt. The patentee discovered subsequent to the issuance of his patent that the celluloid top had the advantage that it did not conduct moisture from the atmosphere to the salt in the cellar. The court said:

"* * * It is true that at the time this patent was applied for the particular process of moisture supply from a metal cap and the insulating capacity of celluloid to stop it were not stated, or, indeed, known to the patentee. He knew metal caps would oxidize, and substituted celluloid to stop oxidation, and such use has shown that the stoppage of oxidation resulted in keeping the salt dry. But the mere failure of a patentee to realize all the benefits and possibilities of his invention is not fatal. The after-discovery of unsuspected usefulness in a disclosed apparatus, far from detracting from its value, may serve to enhance it. It is the benefits which test, use, and time unfold that really determine merit. * * *"

In the case before us Zenitz disclosed his compounds to be useful as tranquilizers as well as hypotensives, sedatives, etc. It is true he made no mention of the separation of hypotensive and tranquilizing activity, but as with the celluloid top in Westmoreland, the advantage of minimized hypotensive activity would inherently flow from the indicated use of the compounds as tranquilizers.

▪ The present facts are to be distinguished from those in the several cases cited by the solicitor[2] to support the contention that appellant is not in a favorable position to urge undisclosed

2. In re Milton E. Herr, 304 F.2d 906, 907, 50 CCPA 705; In re Lundberg, 253 F.2d 244, 45 CCPA 838; In re Crawford,

250 F.2d 370, 45 CCPA 750; In re Rossi, 241 F.2d 726, 44 CCPA 750; In re Stewart, 222 F.2d 747, 42 CCPA

properties as a ground for establishing unobviousness. One of those cases, In re Herr, 304 F.2d 906, 907, 50 CCPA 705, involved certain testosterone derivatives. The affidavit presented evidence of oral anabolic and androgenic activity. The specification was devoid, however, of any mention of such activity for the compounds and the sole utility disclosed in Herr's specification was that the compounds were useful intermediates in the making of other compounds which had anabolic and androgenic activity. It is readily seen that if the disclosure of Herr was followed the compounds would be used as intermediates and no benefit from their anabolic and androgenic activity would flow from such use. Here, Zenitz disclosed a tranquilizer and subsequently established that if it is used as a tranquilizer it is a better one for it minimizes the side effects of hypotensive activity. Therefore we think the latter property must be considered in determining the patentability of the claimed compound.

■ We find the affidavits establish unobviousness as to the hydroxypropyl derivatives and the corresponding hydroxy-ethyl and hydroxy-lower-alkyl derivatives. Therefore, we are obliged to reverse as to claims 3, 9, 10 and 11.

■ As to compounds having acyloxy-lower-alkyl, none of which have been compared, we are unable to find support in the record for concluding that proof of unobviousness of the compounds having hydroxy 'alkyl substituents establishes that the corresponding compounds wherein the hydroxy alkyl substituents are esterified, are also unobvious.[3] We therefore affirm the rejection of claims 5, 12 and 21 as being obvious from the corresponding compounds of Cusic in view of the secondary references showing that Cl and $CF_3$ are commonly employed potentiating groups on compounds of the type here claimed.

The rejection of claims 3, 9, 10 and 11 is reversed.

The rejection of claims 5, 12 and 21 is affirmed.

Modified.

937; In re Dalzell et al., 166 F.2d 834, 35 CCPA 1024; Abbott et al. v. Coe, 71 App.D.C. 195, 109 F.2d 449.

3. Unfortunately Zenitz's brief does not help any. The entire discussion of the actual facts before us is relegated to the following paragraph:

"THE SUBJECT MATTER INVOLVED

"The structure of the compounds on appeal can be seen from the claims on appeal * * *. Their relationship to the references is described in the Examiner's Answer * * *. No further chemical details are here offered because they are unnecessary to decide any issue in this case."