**Application of Arthur MAEDER and Otto Albrecht.**

**Patent Appeal No. 7227.**

United States Court of Customs and Patent Appeals.

Nov. 5, 1964.

James F. Davis (A. Ponack, Washington, D. C., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND,

Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

MARTIN, Judge.

This appeal is from a decision of the Board of Appeals affirming the examiner's rejection of claims 10, 22, 23 and 24 of application serial No. 556,017 filed December 28, 1955 for "New Copolymerization Products." No claims have been allowed.

Claim 22 is illustrative:

"22. A copolymerization product, which forms a stable dispersion in water, of

"(a) a quaternary mono-vinyl ether which corresponds to the formula:

wherein R is a radical selected from the group consisting of lower alkyl radical, glycidyl radical and carboxamidomethyl radical; $R_1$ and $R_2$ taken together form a member selected from the group consisting of

lower alkyl radical

lower alkyl radical

,

lower alkylene radical

lower alkylene radical

, and

O

lower alkylene radical

lower alkylene radical

[;]

$R_3$ is a lower alkylene radical in which two carbon atoms are linked to each other; and X is an anion; said quaternary vinyl ether being present in an amount sufficient to make said copolymerization product water-dispersible and

"(b) at least one other monoethylenically unsaturated polymerizable compound."

———◆———

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

It is evident that the co- and terpolymers claimed are formed from two monomeric components, (a) a quaternary mono-vinyl ether in which the quaternized nitrogen has various substituents, and (b) various other monomers containing a vinyl group.

Claim 23 differs from claim 22 in specifying the component (b) monomers as selected from acrylic acid esters and amides.

Claim 24 differs from claim 22 in calling for "A liquid composition suitable for the dressing of textiles which comprises a stable aqueous dispersion of a copolymerization product of" the monomers (a) and (b).

Claim 10 is drawn to a specific terpolymer in which the R group of the quaternized nitrogen is $CH_2CONH_2$ (carboxamidomethyl), and the (b) component monomers are butyl acrylate and styrol (styrene).

By various combinations of the monomeric components, different polymer products are obtainable in the form of granules, syrupy liquids or solutions, emulsions and dispersions. The different products are disclosed as having various uses, e. g. for fibers, as adhesives and lacquers, and for coatings or dressings on textiles. The claims in issue are directed in particular to polymers [1] for this latter utility. Textiles coated with a dispersion of these polymers have increased water-repellency and improved dye-fastness. Mat effects on polyamide fibers are obtained by the use of dispersions of the claimed polymers as dressings.

The single reference is

Barney 2,764,578 September 25, 1956 [2]
Barney, from title to claims, is generally directed to co- and terpolymers similar to appellants. In *particular* the reference is directed to copolymers of the quaternary vinyl ether with acrylonitrile to form "objects such as fibers which have excellent strength and water resistance with improved dye absorption properties particularly with acid dyes." Barney's quaternary vinyl ethers are somewhat less sophisticated than those of appellants, the essential difference being that the R substituent (in claim 22 reproduced above) is an alkyl radical "of up to four carbons." The difference in R substituent is pertinent only in the discussion of claim 10 below. Particularly useful are β-vinyloxyethyltrialkylammonium salts.

The Barney (a) quaternary vinyl ethers as *homopolymers* are stated to be of too low a molecular weight to be satisfactory for "most plastic applications and particularly films and fibers * *." The quaternary monomers thus were copolymerized "with at least an equimolar proportion of another polymerizable vinylidene compound * * *." The resulting copolymers have a molecular weight of "at least 10,000 and are suitable for plastic applications, including films and fibers." The (b) comonomers used are "acrylyl and methacrylyl compounds, e. g. acrylonitrile, methyl acrylate, methacrylic esters and methacrylamide * * * other vinyl derivatives such as styrene * * *."

Concerning the amount of monomeric compounds, Barney teaches:

"Usually the amount of the quaternary vinyloxyalkyltrialkyl ammonium compound present in the polymer is proportional to the amount employed in the polymerization. The amount of quaternary employed is at least 1% and the amount present in the polymer including copolymer is at least 1% and generally at least 2%.

"Particularly important are the copolymers with acrylonitrile, the

---

1. The word "polymers" is used indiscriminately throughout and includes co- or terpolymers where appropriate, there being no necessity for a distinction between them in this appeal.

2. Filed April 18, 1952. A contention that Barney is not a proper reference because copending with the present application has been withdrawn by appellant in view of In re Harry, 333 F.2d 920, 51 CCPA 1541.

acrylonitrile being present in major amount, i. e., to the extent of at least 85%, on a weight basis. In general the most suitable combination of dyeing properties and physical properties of the oriented product is achieved when 1% to 15% of the vinyloxyalkyltrialkylammonium co-monomer unit is present in the polymer. Preferably the amount of quaternary monomer is 2% to 10%."

All the claims were rejected as "unpatentable over the Barney patent," it being pointed out that the monomer components of Barney fall within the claim definitions for the (a) and (b) components. In considering the rejection of the claims, we find they fall naturally into two groups, the first being the broader claims 22, 23 and 24. Claim 10, because additional reasons for rejection over Barney were given, will be discussed separately.

### Claims 22, 23 and 24

The central issue in this case concerns a limitation in all the claims indicating the amount of quaternary vinyl ether present in the polymer:

"* * * said quaternary vinyl ether being present in an amount sufficient to make said copolymerization product water dispersible * * *."

About this limitation the examiner's answer states:

"This limitation is not seen to render the claims patentable since it is functional at the exact point of alleged novelty over Barney. * * * It may also be pointed out that the compositions of Barney would inherently be water dispersable [sic] in the same sense that applicants' compositions are water dispersable [sic], since substantially the same component may be used in the same proportions."

Appellants, in a reply brief submitted to the board, took this as a new ground of rejection under 35 U.S.C. § 112. The

examiner's reply on remand to him by the board states:

"The claims, however, have not been rejected as indefinite, but are under rejection as unpatentable over Barney. As explained in the Examiner's Answer, the functional limitation here under discussion is not sufficient to distinguish the instant claims from the very closely related products of Barney."

In affirming the examiner, the board stated:

"We do not believe that claims should be allowed when the alleged distinction over the art, namely, the amount of quaternary ammonium compound used is functionally defined, and appellants have not successfully rebutted the Examiner's statement that the amount of quaternary ammonium compound used in Barney's example in column 2 corresponds to that disclosed in appellants' Example 12."

Both appellants and the solicitor now agree that the rejection is under 35 U.S.C. § 103 whether that limitation is termed "functional" or not, and thus we shall take it as being under section 103.

Since the (a) and (b) components of the claims encompass the corresponding components disclosed in Barney, we agree that the patentability of the claims rests upon the limitation as to amount of quaternary vinyl ether monomer. We accept arguendo the contention of appellants that the relationship between water dispersibility and amount of quaternary monomer is established, and that it would be a mere matter of routine skill to determine *specific* amounts of the quaternary monomer to be used in each case. Nevertheless, when we look to the teachings and examples in appellants' specification we see that the amounts are not so different from those in Barney as to result in a patentably distinguishable polymer. At the solicitor's suggestion, we note that Barney's example 1–B has an (a) to (b) ratio of 1:9 (quaternary monomer to acrylonitrile), while

appellants' examples 3–5, directed to the water-dispersible polymer, show the same ratio.

Further, among the broad teachings in appellants' specification we find no discussion of the range of amounts which may be used to produce this water-dispersible species of polymer as distinct from the wide variety of types disclosed as resulting from the combination of the (a) and (b) components. Indeed, the property of water-dispersibility is not discussed, much less related to the use of quaternary component. Contrasted to this is Barney who teaches, "the amount of quaternary employed is at least 1% * * * most suitable combination * * when 1% to 15% * * * is present in the polymer. Preferably the amount of quaternary monomer is 2% to 10%."[3] Clearly then, the amount limitation does not distinguish any of the claims over Barney.

Appellants' claims 22 and 23 additionally describe the copolymer product with the phrase "which forms a stable dispersion in water." Even taking this phrase as a limitation describing a property, we must conclude that Barney's polymer is inherently one which has that property in the same sense as appellants' claimed polymer, since the (a) and (b) components are used in the same proportions as in Barney. This being so, the recitation of that property does not distinguish the claims over Barney.[4] The property is at best merely a newly discovered one, and we do not regard this as sufficient to distinguish over a reference silent as to that property. Therefore, we *affirm* the board as to claims 22 and 23.

Although what we have said concerning the central issue, the amount limitation, applies equally to claim 24, we do not agree that the result is the same because appellants are not claiming the polymer but "A liquid composition * * which comprises a stable aqueous dispersion"[5] of the polymer. Both the examiner and the board, in lumping the claims together, seem to consider that because a dispersion could be made from the polymer, whether due to an inherent property, or by grinding, emulsification or whatever, it would be obvious to do it. We do not agree. Barney is concerned with his polymers as fibers, not as dressings for textile fibers. He nowhere suggests his polymers as a component of a composition with such utility. Barney alone is insufficient to teach that it would be obvious to make a dressing composition as claimed. Although it may be possible to produce such a composition only with the aid of other unclaimed agents, we again must note we do not have any such rejection before us. We therefore *reverse* the rejection of claim 24.

### Claim 10

Claim 10 is specific to a terpolymer which differs in two respects from those shown in Barney. The first difference is that one of the (b) component monomers is butyl acrylate while Barney shows most specifically methyl acrylate.[6] Lacking a showing of any criticality, and falling within the Barney teaching of "acrylyl" compounds and the related member methyl acrylate, we see no distinction in this component that would not be obvious to one of ordinary skill in the polymer art.

3. The full quotation has been set out in the introductory part of the opinion.

4. Because we agree that the Patent Office has shown a prima facie case of inherency by pointing to the close similarity in proportions of substantially the same components, we need not consider the examiner's argument that:
"In addition, the art of preparing aqueous dispersions has advanced to the state where any substance not destroyed by water is dispersible therein by suitable methods such as grinding to colloidal size or through the use of surfactants or other dispersing agents."

5. The asterisks represent the phrase "suitable for the dressing of textiles" which we consider to be merely a statement of intended use and of no patentable significance here.

6. We do not see that this case turns on the question of homology.

Appellants urge as the major distinction in this claim the fact that the R substituent of the quaternized nitrogen of the (a) component is a "carboxamidomethyl" radical, $-CH_2CONH_2$, whereas Barney shows alkyl radicals up to C4 in that position.

The board stated:

" * * * We are of the opinion that the quaternary ammonium compounds disclosed by Barney and the specific quaternary ammonium compound recited in appealed claim 10 are sufficiently similar to warrant a holding that the use of the latter involves nothing unobvious in view of the disclosure of the former."

We do not agree with what we understand to be the position of the board. The board fails to point out in what way the reference compound is "similar" to that claimed, and it thus is not clear how it can be regarded as "sufficiently" similar to make it obvious to one of ordinary skill in this art.

Barney, the only art in the record before us, does not teach us that it would be obvious to substitute a carboxamidomethyl radical, as required by claim 10, for alkyl. Barney lists only alkyl radicals derived from alkyl-containing quaternizing agents. While Barney's list is only descriptive and not limiting, it does not contain any suggestion that another *type* of group may be substituted. We therefore reverse the rejection of claim 10.

The rejection of claims 22 and 23 is affirmed, and that of claims 10 and 24 is reversed.

Modified.