**DEUTSCHE GOLD–UND SILBER–SCHEIDEANSTALT VORMALS ROESSLER, Plaintiff,**

v.

**The COMMISSIONER OF PATENTS, Defendant.**

**Civ. A. No. 39–64.**

United States District Court
District of Columbia.

Jan. 25, 1966.

Jennings Bailey, Jr., Hugo Huettig, Jr., Bailey, Stephens & Huettig, Washington, D. C., for plaintiff.

Joseph Schimmel, Acting Sol., Washington, D. C., for defendant.

JACKSON, District Judge.

This is a civil action under 35 U.S.C. § 145 in which plaintiff seeks an adjudication that it is entitled to receive a patent for the invention disclosed and claimed in Schuler application Serial No. 777,228, filed December 1, 1958. Plaintiff is a German corporation and is the owner by assignment of the Schuler application which is entitled "Piperazino-alkyl-4-azaphenothiazines". The chemical compounds according to the invention are generally disclosed in the Schuler application to possess both antiemetic and cataleptic activities with good tolerance. Evidence of record establishes the fact that cataleptic activity is an indirect measure of sedative or tranquilizing activity.

Claims 2 and 3 of the Schuler application are the only ones involved in this suit and read as follows:

Claim 2:

10 - (N-hydroxyethyl - piperazino - N' - propyl) - 4 - azaphenothiazine

Claim 3:

10 - (N - acetoxyethyl - piperazino - N'propyl) - 4 - azaphenothiazine

The Patent Office Examiner and Board of Appeals have rejected these two claims to specific chemical compounds on the ground that the claimed subject matter would have been obvious under 35 U.S.C. § 103 to an ordinarily skilled chemist at the time the Schuler invention was made, in view of the combined disclosures of the following prior art references:

| | | | |
|---|---|---|---|
| Cusic | 2,766,235 | Oct. 9, 1956 |
| Cusic et al. | 2,838,507 | June 10, 1958 |
| Craig | 2,914,528 | Nov. 24, 1959 |
| Yale et al. | 2,943,086 | June 28, 1960 |
| Belgian Patent | 549,055 | Dec. 27, 1956 |

von Schlichtegroll – Arzn. Forsch., Vol. 7, pages 237 to 252, April 20, 1957.

Defendant relies upon the Belgian patent and Yale et al. as primary references, and Cusic, Cusic et al. and Craig as secondary references.

The Belgian patent discloses 3-aza and 4-azaphenothiazines broadly and specifically discloses in Example 16 a 3-aza compound which further differs from plaintiff's compounds in that the piperazino N-substituent is methyl rather than hydroxyethyl (Claim 2) or acetoxyethyl (Claim 3).

The other primary reference, Yale et al., broadly discloses 4-azaphenothiazines in which the N-substituents on the piperazino ring may be hydrogen or lower alkyl.

Cusic et al. discloses a phenothiazine in which the 10-substituted side chain is identical to that of the compound of plaintiff's Claim 2, namely, N-hydroxyethyl-piperazino-N'-propyl.

Cusic discloses a phenothiazine in which the 10-substituted side chain is identical to that of the compound of plaintiff's Claim 3, namely, N-acetoxyethyl-piperazino-N'propyl.

Craig shows that the N-substituent of N-substituted piperazino-N'propyl-phenothiazines may be hydroxyethyl (as in plaintiff's Claim 2 and Cusic et al.), acetoxyethyl (as in plaintiff's Claim 3 and Cusic), or methyl (as in the Belgian patent and Yale et al., the primary references).

The Court agrees with defendant that it would have been obvious at the time the Schuler invention was made for an ordinarily skilled chemist to have substituted the hydroxyethyl radical of Cusic et al. or the acetoxyethyl radical of Cusic in place of either the methyl radical of Example 16 of the Belgian patent or the hydrogen or lower alkyl substituents of Yale et al.

In other words the Court considers plaintiff's claimed compounds to be structurally obvious in view of the prior art compounds relied upon by defendant. In this regard it should be noted that even if plaintiff had elected to claim the right of priority under 35 U.S.C. § 119

of its counterpart German application filed December 3, 1957, which action would have disposed of Craig (filed April 16, 1958) as a reference, this still would not change the Court's conclusion that the claimed subject matter would have been obvious.

■ ▮ In order to overcome the presumption of obviousness of the claimed compounds which arises from the fact that their structures are obvious in view of those of closely related prior art compounds, plaintiff introduced evidence purporting to show the existence of unexpected or unobvious beneficial properties in the claimed compounds. It is a well-established principle that the pharmacological properties of a chemical compound should be considered in determining the issue of obviousness of the compound. In re Papesch, 315 F.2d 381, 50 CCPA 1084 (1963).

▮ It is also true that, in order for evidence of an alleged advantage of claimed subject matter to have any patentable significance, such advantage must be at least generally disclosed in the application as filed. Abbott v. Coe, 71 U.S.App. D.C. 195, 196, 109 F.2d 449, 450 (1939). In this regard the results of plaintiff's comparative tests show that the compounds of Claims 2 and 3 possess greater antiemetic effect, but less sedative effect than closely related prior art compounds. Since this *separation* of properties was not specifically disclosed in the application as filed, the Patent Office tribunals refused to give weight to the evidence of separation, especially with regard to the lower sedative effects. In support of this course of action, the Board of Appeals cited In re Herr, 304 F.2d 906, 50 CCPA 705 (1962). However, it is noted that the compounds in the *Herr* case were only disclosed to have utility as intermediates in the production of other compounds, which other compounds possessed anabolic and androgenic activity. In other words the claimed intermediates themselves were not disclosed in the specification as filed to possess either type of activity.

▮ A far more pertinent case is In re Zenitz, 333 F.2d 924 (CCPA 1964), in which the Court of Customs and Patent Appeals held that when an applicant discloses his compounds to be generally useful as both hypotensive agents and sedatives he has thereby laid a foundation for showing that his compounds are more active sedatives, but less active hypotensive agents, than closely related prior art compounds, since minimized hypotensive activity is inherently desirable when the compounds are used primarily as tranquilizers or sedatives. This Court is of the opinion that *Zenitz* does not conflict with *Abbott* since, once a compound has been disclosed in the specification as filed to possess a certain utility, evidence may be introduced to show that the compounds are either more or less useful than prior art compounds with closely analogous structures and similar utilities.

▮ In this regard it is especially appropriate (since plaintiff is a German corporation) to state that American patent law, unlike German patent law, does not require a technical advance, or advance in the art, as a fourth condition of patentability. On the contrary, the only three basic requirements for patentability under American patent law are novelty, utility, and unobviousness, according to 35 U.S.C. §§ 101, 102 and 103. A compound need not be better in all respects than prior art compounds used for the same purposes. It may be better in some respects, worse in others.

▮ The facts of the present case are very similar to those of *Zenitz*. The Schuler application as originally filed generally discloses the "compounds according to the invention" to possess both antiemetic and cataleptic (sedative) activity. Specific compounds are disclosed to have stronger antiemetic and sedative activities than one prior art drug, "DOMINAL," (dimethylamino-n-propyl-4-azaphenothiazine). However, since the compounds are generally disclosed to possess utility as both antiemetic and sedative agents, no logical reason is seen (especially in view of *Zenitz*) why plaintiff should be precluded from introducing evi-

dence to show that its claimed compounds are either more or less useful for these purposes than prior art compounds, especially when the combination of high antiemetic activity with low sedative activity is an inherently desirable advantage of the compounds. When a drug is used as an antiemetic to prevent vomiting due to motion sickness by the driver of an automobile, it is inherently desirable that such compound have a minimized sedative effect, since a strong sedative effect would tend to put the driver to sleep. Thus the Court holds that, in view of the general foundation as to utilities laid in the Schuler application as filed, it was erroneous for the Patent Office tribunals to refuse to accord weight to evidence of the separation of properties (high antiemetic and low sedative effect) as beneficial advantages of the claimed compounds. However, the question of whether these advantages were unexpected or unobvious ones is entirely another issue.

With regard to the antiemetic effect, it is first noted that the compounds of the Belgian patent, Cusic, Cusic et al. and Craig are all generally disclosed to possess utility as antiemetics. Plaintiff compared the compounds of Claims 2 and 3 of the Schuler application with four prior art compounds as follows:

1. "THIOPROPAZATE" (the acetoxyethyl compound of Cusic),
2. "PERPHENAZINE" (the hydroxyethyl compound of Cusic et al.)
3. "PROCHLORPERAZINE" (a third non-aza chlorophenothiazine), and
4. N - Methylpiperazino - propyl - 4 - azaphenothiazine, which is broadly disclosed in Yale et al.

The comparative test results are not persuasive of unobviousness of the claimed compounds as antiemetics in view of the fact that the compounds of Claims 2 and 3 were only 10 to 20% more effective as antiemetics than the prior art drugs "PERPHENAZINE" (Cusic et al.) and "PROCHLORPERAZINE", two of the four prior art compounds tested. Under the circumstances, differences of only 10 to 20% are viewed as mere differences in degree.

However, plaintiff primarily relies upon the lower sedative effects of its claimed compounds in comparison with prior art drugs. While such evidence of diminished sedative effect should be considered in determining the issue of obviousness of the claimed compounds, it is noted that the prior art compound of Yale et al. had even *less* sedative effect on mice than the claimed compounds. Although the prior art drugs "THIOPROPAZATE", "PERPHENAZINE" and "PROCHLORPERAZINE" had substantially greater sedative effect than the compounds of plaintiff's claims 2 and 3, the Court is of the opinion that this is merely the result which would be expected in view of the fact that these three prior art drugs are all *chloro*phenothiazines. Even the compounds of Cusic et al. are only "relatively free from undesirable side effects which limit the therapeutic applicability of some other chlorophenothiazines." Since sedative activity is an "undesirable side effect" of drugs used primarily for antiemetic purposes, the Court is of the opinion that an ordinarily skilled chemist reading the above quoted disclosure of Cusic et al. would be likely to conclude that chlorophenothiazines as a class produce undesirable sedative side effects when used for antiemetic purposes. Plaintiff's comparative tests which show that three prior art chlorophenothiazines possess greater sedative activities than the claimed compounds (which are not *chloro*phenothiazines) merely confirm the prediction that chlorophenothiazines as a class produce undesirable sedative side effects when used primarily for antiemetic purposes.

The testimony of plaintiff's witness Dr. von Schlichtegroll at the trial is even stronger in this respect. When plaintiff's counsel asked "What is the usual effect of a chlorine radical in a compound of the phenothiazine or azaphenothiazine type?", the witness testified that "The usual effect, which is well known in the phenothiazine series, is potentiation of activity or enhance-

ment of activity in the chlorine containing substances in comparison with the non-chlorine containing substances."

Later, upon cross-examination by defendant's counsel, Dr. von Schlichtegroll testified that "In spite of having difficulty in predicting, I would rather expect by introducing a chlorine to the azaphenothiazine series to enhance the antipsychotic activity and the sedative activity rather than the antiemetic activity."

Thus, the Court holds that neither the stronger antiemetic effect nor the weaker sedative effects of plaintiff's claimed compounds in comparison with corresponding effects of closely analogous compounds is sufficient to rebut the presumption of obviousness which arises from the fact that plaintiff's compounds are structurally obvious in view of the structural formulas of prior art compounds. Therefore, the decision of the Board of Appeals that plaintiff's claimed compounds are obvious under 35 U.S.C. § 103 and unpatentable over the prior art must be affirmed, and plaintiff's Complaint is dismissed.

This Opinion includes Findings of Fact and Conclusions of Law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.