**ILLINOIS TOOL WORKS INC.,**
**Plaintiff,**

v.

**SOLO CUP CO., Inc., Defendant.**
**No. 69 C 480.**

United States District Court,
N. D. Illinois, E. D.

June 24, 1970.

James P. Hume and Granger Cook, Jr., Hume, Clement, Hume & Lee, Richard R. Trexler, Olson, Trexler, Wolters & Bushnell, and Robert W. Beart, Chicago, Ill., for plaintiff.

James J. Hamill, Anderson, Luedeka, Fitch, Even & Tabin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

DECKER, District Judge.

Plaintiff Illinois Tool Works Inc. (ITW) has brought suit against defendant Solo Cup Company (Solo) for infringement of two of its patents directed to nestable cups, United States Patent Numbers 3,139,213 and 3,091,360. The patented devices, developed by Bryant Edwards for ITW, both describe thin-walled plastic nestable containers hav-

ing side-wall "Z" shaped stacking facilities.[1] The significant difference between the two patents is that the '213 covers continuous stacking rings whereas the '360 encompasses interrupted rings.

Solo has moved for summary judgment as to claims 1, 2 and 3 of the '360 patent on the ground that these claims are invalid for obviousness within the meaning of 35 U.S.C. § 103. Pursuant to an order entered March 6, 1970, the parties briefed only the issues of whether a genuine issue of material fact exists and whether public knowledge and use of plaintiff's containers embodying continuous stacking rings prior to the invention of the '360 patent constitute prior art as to that patent. Only if these issues are decided favorably to defendant need the validity issue itself be briefed.

Solo maintains that Miller, U. S. Patent No. 2,985,914, Caine, U. S. Patent No. 3,845,887, the cups made pursuant to specifications later incorporated in the '213 patent, and plaintiff's statements at the *Sweetheart* trial characterizing the '213 and '360 as the "same general inventive concept," taken together, render the '360 patent obvious. This court held in the *Continental Can* case, *supra*, 273 F. Supp. at 115, that Miller, 2,985,914 did not render the '213 patent obvious, and I incorporated this discussion of the Miller finding in the findings as to the validity of the '360 patent *Sweetheart Plastics*, *supra*, 306 F.Supp. at 364. Similarly, the Caine patent was presented for consideration at the *Sweetheart* trial. Consequently, Solo must rely on the cups made pursuant to the '213 specifications, and on plaintiff's characterization of the similarity of the two patents, in support of its obviousness contention.

Although patent validity is a question of law, a number of factual determinations must be made before a decision as to obviousness can be made. Graham v. John Deere Co., 383 U.S. 1, 17,

---

1. The patents are described in detail in Illinois Tool Works Inc. v. Sweetheart Plastics, Inc., 306 F.Supp. 364 (N.D.Ill. 1969), holding both patents valid, and in Illinois Tool Works, Inc. v. Continental Can Company, 273 F.Supp. 94 (N.D. Ill.1967), aff'd. 397 F.2d 517 (7th Cir. 1968), holding the '213 patent valid.

86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Assuming that the cups cited by defendant are prior art, what they teach to one with ordinary skill in the art is a question best determined with the aid of expert testimony. Moreover, whether plaintiff's characterizations of the '213 and '360 patents constitute admissions of the obviousness of the latter would also seem to present factual questions. Because there are genuine issues of material fact which remain to be resolved, summary judgment is improper.

▆▆▆ But, although this is not the proper time to determine the obviousness issue, the question whether the cups cited by defendant constitute prior art as to the '360 patent must be resolved before trial and, having been briefed, may appropriately be determined in this opinion. The relevant factual background is undisputed. Edwards conceived the idea of a nestable container with a continuous stacking facility in August, 1957, and a patent application therefor was filed in November, 1957. ITW accepted an order for 1,000,000 cups made pursuant to the patent application in December, 1957 and delivered 50,000 of them to Automatic Canteen in April, 1958, which used them in vending machines in April and May of that year. In June, 1958, Edwards conceived the nestable container with the interrupted stacking ring.

In October, 1958 ITW filed a continuation-in-part application covering both the continuous and interrupted stacking facilities, and abandoned the earlier application. In May, 1959 ITW filed a divisional application which matured into the '213 patent, and the continuation-in-part application matured into the '360 patent. The '360 patent was issued first, on May

28, 1963, while the '213 patent was not issued until June 30, 1964.

It is defendant's contention that the sale and public use of the continuous stacking cups in December, 1957 and April, 1958 constitute "prior art" as to the '360 patent to be considered pursuant to 35 U.S.C. § 103.[2] "Prior art" as used in that statutory provision includes all that qualifies as "prior art" under 35 U.S.C. § 102, Graham v. John Deere Co., *supra*, at 15, 86 S.Ct. 684, 15 L.Ed.2d 545; Application of Harry, 333 F.2d 920, 923–924, 51 C.C.P.A. 1541 (1964), and defendant contends that this public use of the continuous stacking cups is encompassed within the language "known or used by others" found in § 102(a).[3]

Defendant's interpretation is certainly a correct literal application of the language of § 102(a), for after the continuous stacking cups were purchased by Automatic Canteen and resold to consumers the invention was "known or used by others." But plaintiff argues that the language of § 102(a) must be read to mean "invented by others" as well as "known or used by others."

The arguments offered in support of plaintiff's interpretation of the statute are not persuasive. ITW's contention that an individual's earlier invention cannot be prior art as to his later inventions is simply incorrect. It is fundamental that a previously issued valid patent may constitute prior art as to a subsequent invention by the same inventor. See, *e. g.*, Application of Jaeger, 241 F.2d 723, 726, 44 C.C.P.A. 767 (1957), wherein the Court stated that "[t]he law makes no distinction between prior art of an applicant's own making and the prior art of others." And it is equally clear that an invention unpatentable pursuant to 35

2. "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * *"

3. "A person shall be entitled to a patent unless—(a) the invention was known or used by others in this country, * * * before the invention thereof by the applicant for patent, * * *."

U.S.C. § 102(b),[4] because the application therefor was untimely filed, constitutes prior art as to a later invention by the same person and is entitled to consideration when the patentability of the later invention is at issue. International Tooth-Crown Co. v. Gaylord, 140 U.S. 55, 11 S.Ct. 716, 35 L.Ed. 347 (1891); Tool Research and Engineering Corp. v. Honcor Corp., 367 F.2d 449 (9th Cir. 1966); Cataphote Corporation v. De Soto Chemical Coatings, Inc., 356 F.2d 24 (9th Cir. 1966); Dix-Seal Corporation v. New Haven Trap Rock Company, 236 F. Supp. 914 (D.Conn.1964).

Plaintiff also argues that literal interpretation of § 102(a) would induce inventors to keep their developments secret until they were perfected. But the same can be said of the rule just referred to making an individual's earlier patents prior art as to his later ones. When an inventor chooses to exploit his creations commercially, all subsequent variations or improvements, by whomever made, must independently meet the tests of patentability. Whatever is in the public domain at the time of conception of the invention, whether another patent, a description of another invention, or public use of a patent applied for but not issued, may be considered in determining whether the later invention should have been obvious.

Plaintiff's contention that literal interpretation of § 102(a) conflicts with the one year grace period of § 102(b) is also without merit. The rule articulated in § 102(b), that an invention is patentable only if application is filed within one year of the first public use or placing on sale of the product, was designed to promote early disclosure of inventions and to prevent prolonged exploitation of the device by the inventor. Metallizing

Eng'r. Co. v. Kenyon Bearing & Auto Parts Co., 153 F.2d 516 (2d Cir.), cert. den. 328 U.S. 840, 66 S.Ct. 1016, 90 L.Ed. 1615 (1946). But the protection of that provision applies only when the same invention claimed by the patent has been in public use less than one year before application, and not when two different patents and two different inventions are involved, as in the instant case. Furthermore, § 102(b) only applies when an invention is made and is then placed in public use. Here the reverse is true, for the public use constituting prior art preceded the invention of the challenged patent. Thus it is apparent that neither the letter nor the spirit of § 102(b) is violated by requiring that an individual's second invention be a patentable advancement over the first.

Finally, ITW claims that a literal reading of § 102(a) would subvert the rationale of 35 U.S.C. § 121. That provision states that under certain circumstances patents growing out of applications with respect to which a requirement for restriction has been made may not be used as references against each other. Its relevance to the instant dispute does not appear, however, for it pertains merely to the prior art status of patents growing out of the same application, not to the prior art status of public use of goods preceding the conception of an invention. And § 121 applies in terms only to "two or more independent and distinct inventions," each of which must stand on its own feet. Therefore, the inventive content of the '360 must be tested as against prior art existing at the date of its conception in June, 1958.

Thus no reason appears for ignoring the plain meaning of the language in § 102(a). Moreover, to do so would give

4. "A person shall be entitled to a patent unless—

    *     *     *     *     *

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, * * *."

an inventor of two similar devices a preferential exemption from the prior art statutes as to the later invention, an exemption not available to anyone else. Indeed, plaintiff concedes that the public use of the continuous stacking cups would constitute prior art which could have been used by and cited against anyone who had invented the '360 in May or June of 1958. Edwards can use this prior art as well, but his new invention must also be measured against what the world knew then about his first invention.

Furthermore, plaintiff's interpretation would permit the inventor of two devices to receive a patent for the later one even though it is an obvious, noninventive variation of the valid first invention. This result would be a clear abuse of the rationale behind the grant of power to "promote the Progress of Science and useful Arts" contained in Article I, Section 8, Clause 8 of the Constitution. As stated by the Court in Dix-Seal Corporation v. New Haven Trap Rock Company, *supra*, 236 F.Supp. at 920:

> "[T]he employment of a standard of patentability less stringent against the first inventor than against these others would seem to impair, if not defeat congressional policy. There should be no distinction between prior art of the inventor's own making and that of others. * * * What has passed into public use may not thereafter be withdrawn by anyone, *including* the inventor, into a legally sanctioned monopoly. There must be a further development which would merit such a privilege."

In accordance with the foregoing, it is ordered that the cups sold to Automatic Canteen by plaintiff in December, 1957 and resold in April and May, 1958 constitute prior art to be considered at trial on the question of the validity of the '360 patent. It is further ordered that the defendant's motion for summary judgment is denied.