54 CCPA

**Application of Martin N. ORNITZ and Ray H. English.**

**Patent Appeal No. 7727.**

United States Court of Customs and Patent Appeals.

May 4, 1967.

Hoopes, Leonard & Buell, Eugene F. Buell, Edward Hoopes, III, Pittsburgh, Pa., for appellants.

Joseph Schimmel, Washington, D. C. (J. F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, and ALMOND, Judges.

SMITH, Judge.

This is an appeal from a decision of the Board of Appeals affirming the examiner's rejection of claims 1–9 in an application [1] entitled "Methods of Continuously Conveying Aluminum," filed August 27, 1959. The following reference is relied on:

Nathaniel B. Ornitz    3,037,756    June 5, 1962
(Filed Sept. 22, 1959)

This reference is a continuation-in-part of Serial No. 571,474, filed March 14, 1956. The rejection is based on subject matter first disclosed in the now abandoned application and carried forward in the reference patent.

The statutory basis for the rejection is unclear. However, before proceeding to the merits of this appeal, the solicitor questions whether appellants' reasons of appeal "are legally adequate to bring the merits [of this case] * * * within the jurisdiction of this Court."

1. Serial No. 836,517.

Appellants stated in their reasons of appeal that the board erred:

### I.

* * * in affirming the Examiner.

### II.

* * * in holding claims 1 through 9 to be *precisely disclosed* in Ornitz patent 3,037,756. [Emphasis added.]

The solicitor argues that appellants' language infers the claims were rejected on the basis of an anticipation under section 102. He argues that as the board used the term "obviousness" in its opinion, the "manifest basis for the rejection is 35 USC 103." Consequently, according to the solicitor, the reasons of appeal fail to encompass the ground of rejection.

However, the board *also* stated in its opinion that appellants claimed a "species" while the patent claims defined a "genus" and that the appealed claims were within the "scope" of the patent claims; further, the claimed process was "precisely the same" as that disclosed in the reference, "except for the work being aluminum." Apparently appellants assign as error the conclusion that the reference or the "genus" claims therein *disclose* their invention. While we shall return to an examination of the board's reasoning, we will state at this point that it is not clear whether the rejection is based on section 102 or section 103, or even "double patenting," discussed infra. While both appellants and the board could and should have been more helpful in identifying the statutory basis for the rejection, appellants' interpretation of the board's opinion is *not* unreasonable. The assignment of reasons of appeal from an ambiguous opinion should not be made a game, 35 U.S.C. § 132, with the appellant the loser should he ultimately be proven incorrect as to the statutory basis for the board's decision. Accordingly, we do not find appellants' reasons of appeal inadequate.

Before considering the claimed subject matter in view of the teachings of Ornitz, there is a dispute as to whether it is a valid reference, 35 U.S.C. §§ 102 (e), 103. Appellants argue:

The Ornitz Patent No. 3,037,756 issued on an application which was co-pending with the instant Ornitz and English application and assigned to the same assignee. Such a patent can be used only for purposes of double patenting. It cannot properly be used for the purpose of showing unpatentability generally. Ex parte Cummings and Carroll, 55 USPQ 428; In re Horneman, [194 F.2d 108, 39 CCPA 809;] 92 USPQ 316; In re Coleman [& Wolf], [189 F.2d 976, 38 CCPA 1156;] 90 USPQ 100. It is clear from these decisions that where two applications of the same party or the same assignee are copending and one issues before the other, the issued patent may be used only for the purpose of showing double patenting. * * *

We will point out at this time that the "Ornitz" disclosed as patentee and the "Ornitz" disclosed as an appellant are different persons, admitted to be father and son during oral argument.[2] The Ornitz patent is assigned to Blaw-Knox Co., which apparently is the common assignee referred to by appellants.

In establishing Ornitz as a proper reference, the solicitor first argues "Ornitz" is "another" to "Ornitz and English," citing 35 U.S.C. § 102(e). We agree and add as authority In re Land, 368 F.2d 866, 54 CCPA 806; In re Bowers, 359 F. 2d 886, 53 CCPA 1590. Moreover, the point is hardly debatable where, as here, appellants and the patentee are different persons. In view of the argument made below,[3] this fact may not have been made clear to the solicitor.

The solicitor then argues the subject matter described in the Ornitz patent, which is also found in the aban-

---

2. The completely inconsistent argument presented to the board by appellants, according to the examiner's answer, that "Mr. Ornitz," appellant, was the same

person as "N. B. Ornitz," patentee, was not presented here.

3. See supra, fn. 2.

doned Ornitz application, is entitled to the filing date of that abandoned application, 35 U.S.C. § 120. This date antedates appellants' filing date. Consequently, according to the solicitor, that subject matter is:

> * * * described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent." Such subject matter is prior art under 35 U.S.C. 102(e) and 103. Hazeltine [Research, Inc.] v. Brenner, 382 U.S. 252, [86 S.Ct. 335, 15 L.Ed.2d 304;] 147 USPQ 429; In re Harry, 333 F.2d 920, 51 CCPA 1541.

■ We agree with the above reasoning insofar as it is consistent with our opinion in *Land,* supra. The requirements of section 102(e) are as follows. While the reference relied on need not "describe" the claimed invention to be otherwise available as a reference, *Hazeltine,* supra, there must be (1) an application for a patent (2) which issues as a patent, (3) filed by *another* (4) before the invention thereof by the applicant. In *Land* we considered requirement (4).

The solicitor, in support of his conclusion that the subject matter relied on is "prior art," does not rest his conclusion solely on the fact that the subject matter in the Ornitz patent is entitled to an earlier filing date. The solicitor argues that an examination of the subject matter relied on in the Ornitz patent and that claimed by appellants demonstrates that appellants had the Ornitz subject matter "available as their starting point." See In re LoPresti, 333 F.2d 932, 52 CCPA 755.

At this point we will examine the subject matter disclosed by Ornitz and that claimed by appellants.

Appellants' specification states:

> * * * Attempts have been made to handle aluminum strip in heat-treating furnaces at 900° F. to 1,100° F. in the continuous form as is done in the steel industry. These attempts have met with failure because the surfaces of the conveyor rolls in contact with the strip pick up accretions of material from the strip, which accretions make the roll surface rough (instead of smooth as installed) and deform the portions of the strip thereafter passing over the rolls. This has been particularly accentuated because of the softness of the aluminum being treated.
>
> In the past, ceramic rolls, chrome iron rolls, chrome plated rolls and Meehanite rolls, both bare and coated with various refractory oxides or porcelain, have all been tried without success.
>
> We have discovered that this undesirable pickup may be eliminated by carrying the strip over furnace conveyor rolls, having, at their work-engaging surfaces, a high proportion of carbonaceous material, such as graphite or carbon. Preferably, we provide a metal body having a sleeve fitted thereon, which sleeve has a high proportion of carbonaceous material in its composition. * * * The roll sleeve comprises a mass of carbonaceous particles, preferably mixed with particles of additions such as certain metals and compounds of those metals and a suitable binder. * * *

After setting forth ten examples, the specification states:

> As illustrated by the foregoing examples, our invention resides in a new process of continuous heat-treating of aluminum strip chracterized by freedom from damage to the strip due to roughening of the rolls by pickup which has occurred in all previously suggested processes. This problem is overcome by supporting the aluminum in contact with the heat-treating gases upon solid supporting surfaces comprising at least 20% carbon particles, with which other generally refractory material including metals which form stable oxides and which have a preferential affinity to oxygen with respect to carbon (e. g., silicon, titanium, zirconium) may be combined as illustrated by the examples. Some suitable compositions for such sleeves and support-

ing surfaces are disclosed in the Nathaniel B. Ornitz patent No. 2,772,872 and later application Serial No. 571,474, filed March 14, 1956.

Appealed claim 1, referred to by the board as representative, is as follows:

1. In the handling of aluminum strip at elevated temperatures the step of conveying the strip on a roll whose surface contains in excess of 20% carbonaceous matter.

Turning now to the Ornitz patent it will be seen that he was also concerned with "the so-called 'pick-up' phenomenon." Ornitz discloses that the metal sheet or strip conveyed may be "ferrous sheets," "silicon steels," "stainless steels" and also "non-ferrous metals," including "brass, copper and Monel metal." Ornitz discloses a sleeve member which is "made essentially of an admixture of carbon and metal." The sleeve may be prepared

* * * by mixing carbon particles in the amorphous or graphitic state with particles of a metal like silicon, titanium, zirconium, chromium and/or aluminum, which metals form stable solid predominantly non-alkaline oxides, and have an affinity for oxygen higher than carbon does at the heat-treating temperatures which will prevail in such furnaces. * * *

We now return to the issue of whether the Ornitz reference is "prior art." There is nothing of record contradicting the solicitor's argument that appellants had Ornitz' work available "as their starting point." Appellants' application, filed over forty-one months after the Ornitz parent application, expressly states that "suitable compositions" for their sleeve member are disclosed in Ornitz. We think that the Patent Office has established that the subject matter relied on in Ornitz was contained "in a patent granted on an application for patent by another filed in the United States *before the invention thereof by the* [appellants]," 35 U.S.C. §§ 102(e), 120. In re Land, supra. This subject matter is therefore prior art, 35 U.S.C. § 103, see In re Harry, supra.

The authorities relied on by appellants, supra, are not contrary. While "double patenting" rejections are made by the Patent Office when there is a common assignee and different inventors, this is done because the reference relied on is not "prior art" as explained in *Coleman,* supra, cited by appellants. Where the terms of section 102(e) are satisfied, as here, we think the Patent Office should apply the statutes as the basis for refusing a patent. Where it is possible to conduct the broader inquiry permitted by sections 102(e) and 103 because the references are "prior art," it does not make sense to resort to the narrower inquiry which underlies a "double patenting" rejection. See In re Bowers, supra.

The determinative issue is thus whether appellants' claimed invention is obvious in view of Ornitz. The board was of the view that the process disclosed in Ornitz and appellants' process were "precisely the same." Ornitz applied the process to "ferrous" and "non-ferrous" metals while appellants apply the process to aluminum. Ornitz admittedly does not disclose applying this process specifically to aluminum.

Appellants argue in substance that (1) Ornitz "significantly" omitted any reference to aluminum; (2) there is no suggestion in Ornitz of handling aluminum continuously in any form; (3) those of ordinary skill in the aluminum handling art would not be taught a solution to aluminum pick-up from Ornitz' teachings in view of it being a "long standing, well recognized problem which existed in that industry;" (4) teachings in the steel industry cannot be "equated" to the aluminum industry; (5) Ornitz teaches that the oxidizable metal described and claimed is essential whereas in appellants' invention it is not; and (6) the invention defined by the appealed claims is not limited to the rolls defined in Ornitz.

As to (1) there is no evidence that it is somehow "significant" that Ornitz omitted reference to aluminum. Similarly, as to the alleged long standing problem in the aluminum industry, item

(3), no evidence has been submitted. As to item (4), the solicitor points out:

* * * except for reference in appellant's specification * * * to unsuccessful attempts to handle aluminum by methods used in the *steel industry*, the record provides no factual basis tending to indicate that one could not reasonably expect success in equating a teaching applicable to other areas of non-ferrous industries to the aluminum industry. * * *

In view of the *fact* that Ornitz teaches the same solution to the pick-up problem in non-ferrous and ferrous industries the solicitor's arguments are persuasive. Item (4) is thus at best argumentative and unsupported by evidence of record.

As to item (5), appellants' specification states "metals which form stable oxides and which have a preferential affinity to oxygen with respect to carbon" may be used in the rolls in order to "overcome" the aluminum "pick-up" problem. The roll sleeve is comprised of "a mass of carbonaceous particles, preferably mixed with particles of additions such as certain metals" and the rolls disclosed in Ornitz are "suitable" according to appellants' specification. The fact that certain metals may be omitted was not urged as being critical in the specification nor was this stated to be a preferred embodiment. The absence of these metals is not deemed conclusive of nonobviousness.

It is now apparent that the dispositive question in this appeal is whether it would have been obvious to one of ordinary skill in the art to utilize Ornitz' rolls for the *continuous handling of aluminum*. In this regard, the board reasoned:

It is our opinion that since the patentee predicated that it was useful with non-ferrous metals (without limitation) since claims were allowed of such scope, to try the process to treat aluminum (a metal that is embraced within the patent claims) and to find that the patent was correctly issued with claims of such scope because the process is in fact operative

with aluminum, would be no more than doing that which is made obvious by the patented subject matter. It is to be expected of a person of ordinary skill to test the various species within a patented genus and where, as here, the tested species within the genus is found to be both operative and that the only result derived is that taught by the patent, nothing of patentable moment has been accomplished.

The solicitor adds:

* * * The process claimed by Ornitz in the patent is clearly generic to the treatment of any metal, including aluminum, and therefore embraces the process claimed by appellants in the application on appeal. * * *

We agree with the solicitor that common ownership "has no significance" concerning issues arising under section 103, citing In re LoPresti, supra. See also In re Land, supra. Precisely because the issue arises under section 103, we think the result reached by the board, while correct, would have been better reached by applying the terms of section 103. Ascertaining the "scope" of the *claims* in the prior art and comparing the "scope" of the appealed *claims* finds no basis under section 103 and leads to unnecessary confusion. It is basic patent law that claims of a patent may dominate those of an application yet that is not necessarily determinative of whether the invention defined in the application is *obvious* in view of the teachings set forth in the prior art patent. Thus whether the invention defined by the appealed claims is within the "scope" of the claims of Ornitz is of little moment. Similarly, whether the appealed claims are not limited to the rolls defined in Ornitz, item (6), supra, is not determinative of obviousness.

Whether the appealed claims define a "species" and Ornitz defines a "genus" claim also is of no moment under section 103. The labels of "species" and "genus" often depend on hindsight,

forbidden as a test under section 103, and it is not uncommon that a "species" may be patentable, that is, satisfy sections 101–103, notwithstanding a prior art "genus."

Lastly, the board reasoned it would be "obvious to try" Ornitz' rolls to handle aluminum because of the "scope" of Ornitz' claims. The solicitor points out:

> While the phrasing of the rejection is similar to the "obvious to try" statement criticized by the Court in In re Tomlinson et al., 363 F.2d 928, 53 CCPA 1421; 150 USPQ 623; In re Henderson, 52 CCPA 1656, 348 F.2d 550, 146 USPQ 372; and In re Huellmantel, 324 F.2d 998, 51 CCPA 845, 139 USPQ 496; those decisions do not suggest that such phrasing of a rejection is *inherently* improper. In both *Henderson* and *Huellmantel* the objection was that unexpected properties or results had been ignored. * * * [Emphasis added.]

The solicitor's brief continues:

> The Board of Appeals in this case used the criterion "obvious to try" in the same sense that this Court did in In re Pantzer et al., 341 F.2d 121, 52 CCPA 1135, and In re Ruscetta et al., 255 F.2d 687, 45 CCPA 968. * * *

Appellants argue Ornitz does not "suggest" handling aluminum, item (2).

We think that one of ordinary skill in the art having the teachings of Ornitz before him, in absence of any evidence supporting appellants' allegations, would find the claimed subject matter obvious. Ornitz teaches the handling of copper and brass with the specific rolls disclosed therein. In view of section 103, there is no patentable invention in claiming the use of Ornitz' rolls to handle aluminum. Section 103 does not require that Ornitz expressly suggest the handling of aluminum, item 2, supra. The decision of the board is therefore affirmed.

Affirmed.