54 CCPA

**Application of Willie FONG, Amon H. Brown, William L. Wasley, Robert E. Whitfield and Lowell A. Miller.**

**Patent Appeal No. 7786.**

United States Court of Customs and Patents Appeals.

June 15, 1967.

T. Hayward Brown, Thomas J. Byrnes, Washington, D. C. (Rubin Hoffman, Washington, D. C., of counsel) for appellants.

Joseph Schimmel, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.[*]

RICH, Judge.

This appeal is from a decision of the Patent Office Board of Appeals affirming the final rejection of claims 1–11 in application serial No. 174,315, filed February 19, 1962, entitled "Continuous Shrinkproofing of Wool Textiles." No claim has been allowed.

The only reference relied upon is U. S. Patent No. 3,078,138, issued February 19, 1963, to Miller, Whitfield, and Wasley, on an application filed March 27, 1961. It describes a process for shrinkproofing woolen textile material by forming a resin on its surface. We quote from the general statement of the invention:

This is accomplished by serially applying to the wool the complementary agents required to form the desired polymer, these agents—in the preferred modification of the invention— being dissolved in mutually-immiscible solvents. Thus in a typical embodiment of the invention the wool is first impregnated with an aqueous solution of a diamine and then impregnated with a solution of a diacid chloride in a water-immiscible solvent such as carbon tetrachloride. * * * Under these conditions the diamine and diacid chloride react almost instantaneously at the interface between the phases, producing in situ on the fibers a high molecular weight, resinous polyamide which coats the fibers and renders them shrinkproof.

The patent also discloses the following general considerations:

A preferred method involves immersing the wool in one solution, removing excess liquid as by use of squeeze rolls, immersing the wool with the second solution, again removing excess liquid, rinsing the treated fabric in water and then drying it. Conventional apparatus consisting of tanks, padding rolls, squeeze rolls and the like are generally used in applying the respective solutions. The amount of each solution applied to the textile may be varied by altering the residence time in the solutions, the pressure exerted by the squeeze rolls and by varying the concentration of the active materials in the respective solutions. To decrease carry-over of the solvent from the first treating solution to the second solution, the wool after its immersion in the first solution may be subjected to drying conditions such as a current of warm air to concentrate the solution carried by the wool.

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

\* \* \* \* \* \*

Ordinarily, the treatment of the wool with the solutions of the complementary agents is carried out at room temperature as at such temperature the polymerization takes place very rapidly, that is, in a matter of a minute or less. If, however, a higher rate of polymerization is ꞌdesired—as in continuous operation on long lengths of cloth—the second solution may be kept hot, for example, at a temperature up to around 150°C.

Appellants' invention is an adaptation of the basic process of Miller et al. to continuous processing. It includes control of five process parameters: (1) the pH of the woolen fabric, (2) the temperature of the diamine solution, (3) the residence time of the diamine solution on the fabric, (4) the amount of diamine solution retained by the fabric, and (5) the pressure applied in the final "padding" of the fabric. Claim 11 is illustrative:

11. A process for shrinkproofing long lengths of wool textile in continuous operation at a rate of at least 10 ypm. which comprises continuously applying the following steps in sequence: Providing wool textile having a pH in the range from 7 to about 9, passing the textile through an aqueous solution of a diamine maintained at a temperature about from 90 to 150°F, holding the textile in contact with excess diamine solution until the said solution has thoroughly and completely penetrated into the textile, pressing the textile to the extent necessary to remove all the diamine solution which is loosely associated with the textile in the form of surface deposits and collected in interstitial areas to provide a fabric wherein substantially all the retained diamine solution is coated on the fibrous elements of the textile and to provide a wet pickup in the range of about 30 to 60%, impregnating the

fabric with a solution of a diacid chloride dissolved in an inert, volatile, essentially water-immiscible solvent, and pressing the fabric under a pressure of at least 100 lbs. per linear inch.

Other claims are directed to limitations on one of the above-listed parameters. Claim 1 is typical:

1. In the process of shrinkproofing wool wherein a wool textile is subjected in continuous operation at a rate of at least 10 ypm. to serial impregnation with (a) a solution of a diamine in water and then with (b) a solution of a bifunctional compound capable of forming a polymer with the diamine, said compound being dissolved in an inert, volatile, essentially water-immiscible solvent, the improvement which comprises *adjusting the pH of the textile to the range from · 7 to about 9,* prior to impregnating it with the diamine solution. [Emphasis ours.]

The examiner rejected appellants' claims as obvious in view of Miller et al. under 35 U.S.C. § 103. 35 U.S.C. § 102 (e) is necessarily relied on to make the reference available. In his opinion, "the five limitations [the controlled parameters above referred to] relied upon by appellants as features which patentably distinguish their process from that of Miller et al. are either specifically disclosed as features of the Miller et al. process or are wholly obvious over the features of said process which are disclosed."

In affirming, the board said: " \* \* appellants have merely adapted the Miller et al. process to continuous operation which we believe to be well within the skill of a person versed in this art." We agree.

■ Appellants point to the fact that their application and the copending Miller et al. patent are commonly owned.[1]

---

1. Both the reference patent and the application on appeal are assigned to the United States of America as represented by the Secretary of Agriculture. Appellants have filed a terminal disclaimer so that any patent issued on their application will expire contemporaneously with the Miller et al. patent. 35 U.S.C. § 253. Our disposition of the case does not require consideration of the disclaimer. It cannot, of course, obviate a rejection based on obviousness in view of prior art

They argue that the reference, therefore, may support only a double-patenting rejection. Since, in appellants' opinion, the rejection is properly double-patenting, they allege error in the use of the Miller et al. *disclosure* as prior art. See, e. g., In re Hammell, 332 F.2d 796, 799, 51 CCPA 1469, 1472 (1964).

We must reject the premise that common ownership and copendency in themselves necessarily preclude consideration of a patent as a part of the prior art. A United States patent to another is a valid prior art reference when its United States filing date is earlier than the date of the applicant's invention. 35 U.S.C. § 102(e); Alexander Milburn Co. v. Davis-Bournonville, 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651 (1926). Appellants' filing date, no earlier date having been proved, is their date of invention. A patent is "to another" when the "inventive entities" are different, In re Land, 368 F.2d 866, 54 CCPA 806 (1966), and may then be used as prior art to make the determination required by 35 U.S.C. § 103. Hazeltine Research, Inc. v. Brenner, 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed.2d 304 (1965); In re Harry, 333 F.2d 920, 51 CCPA 1541 (1964); see In re Hilmer, 359 F.2d 859, 53 CCPA 1287 (1966).

Appellants would have us carve out an exception to 35 U.S.C. § 102(e) in the guise of interpreting "to another." They recognize that in In re Land, supra, we decided that Land, as sole inventor, and Rogers, as sole inventor, were each "another" to Land and Rogers as joint inventors, despite the common ownership and copendency of the reference patents and application on appeal. They ask us to overrule that case because it fails to take into account modern research techniques in which groups rather than individuals make inventions. Appellants argue that the disclosure of these inventions can only be delayed by a system which makes available the patents issued to one part of a group as prior art against the applications of another part.

Appellants' argument is not without some basis. However, it predicates an elasticity of the statute which we do not find.[2] We are not dealing here with the judicially developed aspects of the law of double patenting, as appellants would have us assume, but with the legislatively declared content of the "prior art." We decline to overrule In re Land, supra, and hold that the Miller et al patent was properly cited as prior art against appellants' application.[3]

Appellants argue, however, that even if the Miller et al. specification is prior art, their invention is nonetheless unobvious. They rely on their claim limitations on the five process parameters to impart that unobviousness.

Appellants require control of the initial pH of the woolen fabric between the

under 35 U.S.C. § 103. In re Bowers, 359 F.2d 886, 53 CCPA 1590 (1966).

2. The facts in this case are similar to those in In re Land in that the separate inventive entities include some of the same individuals. This factor was argued in In re Land as determinative of whether the references were properly prior art against the application. In the case at bar, appellants' argument emphasizes the common assignee of the application and reference as the determinative consideration. We think this is the weaker argument. See In re Ornitz, 376 F.2d 330, 54 CCPA —— (1967), In re LoPresti, 333 F.2d 932, 52 CCPA 755 (1964).

3. Appellants' brief, written before In re Land was decided, relies on In re Blout, 333 F.2d 928, 52 CCPA 751 (1964), in which it was decided that an earlier filed patent to Corley, which had been copending with the application on appeal, was not properly a prior art reference. The court, however, was there satisfied that the affidavit *evidence* showed no *prior* knowledge by Corley of the invention of Blout and Rogers. Corley, Blout, and Rogers all worked together. "When the 102(e) reference patentee got knowledge of the applicant's invention *from him*, as by being associated with him * * * and *thereafter* describes it, he necessarily files the application *after* the applicant's invention date and the patent as a 'reference' does not evidence that the invention, when made, was already known to others." In re Land, supra. [Emphasis added.] There is no such evidence in this case.

limits 7 and 9. The examiner held that this was obvious inasmuch as—

It is obviously somewhat less than sensible to effect diamine penetration of a substrate for the purpose of promoting polymer formation with monomers subsequently applied if the activity of the diamine in the substrate is allowed to be inhibited through salt formation resulting from a failure to effect the substrate's neutralization prior to the diamine treatment thereof.

The board agreed.

Appellants' argument below focused on the failure of the examiner to appreciate the "real factor of significance—the ability of the diamine solution to penetrate into and exhaust onto the fabric." They argued:

It is obvious that this mechanism of penetration and exhaustion of the diamine is totally unrelated to the subsequent reaction of the diamine and acid chloride because if the first step (penetration and exhaustion) is incomplete or nonuniform, *an inferior product will be attained even if there is proper reaction of diamine and acid chloride.*

The board concluded:

With respect to * * * neutralization of the wool, the Examiner has given one valid reason for its application and this suffices to make this step obvious. However, again the comparison made [in one of the examples] * * * is not sufficiently detailed to warrant the conclusion that this step is critical. The example does not give the pH of the carbonized wool nor its pH after treatment with the weak sodium carbonate solution. The claims are inclusive of treating neutral [pH 7] wool, as well as wool of pH up to 9.

We agree.

Appellants here challenge in this court, for the first time, the validity of the examiner's "one reason," at least on this record, there being "no evidence to indicate what quantity of acidic materials were present on unneutralized woolen fabrics." We do not consider this argument. In re Moureu, 345 F.2d 595, 52

CCPA 1363 (1965). When an examiner's statement is first controverted on appeal to us, especially for lack of evidentiary support, we are not only deprived of the benefit of his views and those of the board on the particular point, but we also lack assurance that the appropriate support could not have been provided, absent the implicit acceptance of the statement's validity by appellants below.

Appellants do not controvert the board's conclusion that heating the diamine to facilitate continuous processing is an old expedient. They merely point out that the Miller et al. patent does not suggest the specific temperatures claimed for that particular purpose. An express suggestion is, of course, not required. In re Rosselet, 347 F.2d 847, 52 CCPA 1533 (1965).

We also agree with the examiner and the board that the limitations directed to the time of contact of diamine and fabric, the removal of excess diamine from the fabric, and the final padding pressure define the most obvious variants of the process disclosed by the reference where, indeed, they define any variant at all.

The decision of the board is affirmed.

Affirmed.