55 CCPA

**Application of Arthur C. BORG and Stephen J. Zajac.**

**Patent Appeal No. 7824.**

United States Court of Customs and Patent Appeals.

April 18, 1968.

Arthur G. Gilkes, Chicago, Ill., (Edward B. Beale, Washington, D. C., Arthur H. Bransky, Chicago, Ill., Robert J. Wagner, of counsel), for appellants.

Joseph Schimmel, Washington, D. C., (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and KIRKPATRICK*, Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection of claims 2, 5, 6 and 9–11 in appellants' application[1] entitled "High Temperature Grease."

The claimed invention relates to a high temperature grease composition containing (1) an oleaginous lubricant base, (2) a reaction product of boric acid and an aromatic polyisocyanate as a thickener, and (3) finely divided silica, also a thickener.

The examiner's rejection is predicated on the following patents:

Stross    2,554,222   May 22, 1951.
Zajac     3,166,506   Jan. 19, 1965.
          (Application filed Feb. 21, 1962.)

The Zajac patent, issued on an application filed by one of the appellants here shortly before the application at bar was filed and having the same assignee, describes and claims a grease composition comprising two of the components of appellants' grease composition—(1) an oleaginous lubricant base and (2) a reac-

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 178,539, filed March 9, 1962.

tion product of boric acid and an aromatic polyisocyanate as a thickener. Stross discloses that finely divided silica is well known as a thickener for lubricating greases, a fact further confirmed by appellants' specification.

Before discussing the primary issue before us, it is well to dispose initially of a secondary contention raised by appellants. They urge that the Zajac patent "was improperly applied as a reference" against the present claims, arguing that:

> \* \* \* it was error to apply Zajac as a reference in the present application since the claimed subject matter of the present application was disclosed, but not claimed, in the application of Zajac as originally filed [2], thus entitling Appellants under 35 U.S.C. 120 [3] to the filing date as to that subject matter in the present application which is common to the parent Zajac application.

Implicit in appellants' contention is their apparent belief that the Patent Office has erroneously applied the Zajac patent as evidence of *prior art* under 35 U.S.C. § 103.

■ We decline to treat the issue posed by appellants for, as pointed out by the solicitor, the issue is not presented by the decision of the board. Curiously, the examiner and board appear to have made *no* rejection employing the Zajac patent as a *prior art* reference under §§ 102(e) and 103 to show what would have been obvious to one of ordinary skill in the art at the time appellants made their invention, although the de-

scription therein of the Zajac invention seemingly enjoys the status of statutory prior art as to Borg and Zajac under those provisions [4] and appellants' present application acknowledges Zajac's invention as something that has "heretofore been discovered." [5] Our jurisdiction, of course, does not encompass review of a nonexistent decision of the board. 35 U.S.C. § 141; In re Johnsen, 359 F.2d 905, 53 CCPA 1401.

■ We turn, then, to the rejection actually before us. The examiner rejected the present claims solely "on the ground of double patenting" as unpatentable over the claims of the commonly-assigned Zajac patent. He appears to have found appellants' addition of silica to the composition claimed by Zajac to be obvious in the double patenting, rather than statutory, sense in view of the Stross reference. Thereupon, after the examiner's Answer, appellants' assignee filed a terminal disclaimer under 35 U.S.C. § 253, disclaiming "that terminal portion of the term of such patent as is granted upon the \* \* \* [Borg and Zajac] application, to whatever extent such term extends beyond the expiration date of January 19, 1982 of [Zajac] Letters Patent No. 3,166,506." The avowed purpose of that document, according to appellants, was "[t]o overcome the rejection of double patenting." Said the board:

> While appellants have filed a terminal disclaimer, this is not a situation where such a disclaimer could be effec-

---

2. The description of the presently claimed subject matter appearing in the Zajac application does not appear in the Zajac patent, having been deleted by amendment under Patent Office Rule 312 before issuance.

3. Section 120 reads:
   An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States *by the same inventor* shall have the same effect, as to such invention, as though filed on the date of the prior applica-

tion, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application. (Emphasis supplied).

4. See, for example, In re Land, 368 F.2d 866, 54 CCPA 806; In re Ornitz, 376 F.2d 330, 54 CCPA 1304; In re Fong, 378 F.2d 977, 54 CCPA 1482.

5. See In re LoPresti, 333 F.2d 932, 52 CCPA 755; In re Ornitz, supra.

tive to avoid a double patenting rejection. See In re Siu, 42 CCPA 864; * * * 222 F.2d 267; 105 USPQ 428. Neither In re Robeson, 51 CCPA 1271; * * * 331 F.2d 610; 141 USPQ 485 relied on by appellants, nor in In re Kaye, 51 CCPA 1465; * * * 332 F.2d 816; 141 USPQ 829 involving a question similar to In re Robeson, supra, are applicable, since different legal entities, i. e., different inventorships, as between the instant application and assignee's patent are involved in the situation before us.

That decision preceded the decision of this court in In re Bowers, 359 F.2d 886, 53 CCPA 1590, heavily relied on here by appellants. There the board similarly gave "no weight" to a terminal disclaimer filed by the assignee of the application and patents involved on appeal, stating that "it is not apparent" that *Robeson* or *Kaye* "apply to the situation where a terminal disclaimer is offered with respect to the commonly owned patent of a different inventive entity." In reversing the board, the court stated:

> It is true that in both *Robeson,* supra, and *Kaye,* supra, the double patenting rejections which we found to be obviated by the terminal disclaimer were predicated in each case on the same inventorship. However, we find this to be a distinction without legal significance in the present context.

Statutory authority for the terminal disclaimer here in issue is found in 35 U.S.C. § 253, the second paragraph of which provides:

> In like manner any patentee or applicant may disclaim or dedicate to the public the entire term, or any terminal part of the term, of the patent granted or to be granted.

It is to be noted that the parties authorized by the statute to file the terminal disclaimer are "any patentee or applicant." It seems clear that Congress intended that the remedies of this section were also to be available to assignees in view of the express provision of 35 U.S.C. § 100(d) that:

> (d) The word "patentee" includes not only the patentee to whom the patent was issued but also the successors in title to the patentee.

The court concluded:

> We agree with the Court of Appeals in Hays [v. Brenner, 357 F.2d 287, 148 USPQ 365 (D.C.Cir.1966)] that a terminal disclaimer will not obviate a rejection for obviousness in view of the prior art *under* 35 U.S.C. § 103. That situation is not presented here and the solicitor's reliance on the *Hays* decision is misplaced. The facts here, however, present a case in which the filing of a terminal disclaimer, as permitted under section 253, is effective to overcome a rejection *based only on double patenting.* The different chemical compounds defined in the respective claims are different inventions. The claims specify these differences and thus do not define the same invention. In re Siu, supra.

> In summary, where there are in fact separate inventions, each of which is considered patentable over the prior art absent a patent on the other, a rejection *based upon double patenting* can be obviated by the filing of a terminal disclaimer under 35 U.S.C. § 253 which may be filed by a common assignee.

The solicitor does not argue that the above reasoning and conclusion are not in point here. Rather, he seeks to distinguish *Bowers* on the grounds that (1) in *Bowers,* the patents on which the double patenting rejection was predicated issued on later-filed applications whereas the Zajac patent here issued on an earlier-filed application, and (2) the application claims in *Bowers* were directed to *different* inventions than those appearing in the patent claims, whereas the claims here are allegedly directed to the *same* invention as that claimed by Zajac or, at best, a "mere colorable variation" thereof.

The first distinction offered by the solicitor is immaterial to the present issue for, as the court pointed out in

*Bowers,* "the filing date [of the patent relied on] is of no concern" in *double patenting* situations and, as we have observed earlier, the Patent Office has made no rejection in the present case that employs the Zajac patent as *prior art.*

The second distinction offered by the solicitor was not discussed below, as the examiner and board did not explicitly express their views as to whether they thought the present claims to be drawn to a different invention than that claimed by Zajac or a "mere colorable variation" thereof. While we appreciate the solicitor's arguments, it seems to us that the presently claimed composition in which three components, including silica, are expressly recited is something more than a "mere colorable variation" of the Zajac claimed composition in which but two components are expressly recited, even though the silica component may be an obvious modification of, or addition to, the Zajac composition in a double patenting sense.

We conclude that the terminal disclaimer filed in appellants' application is effective to overcome the double patenting rejection made by the Patent Office. Accordingly, we are obliged to reverse its decision.

Reversed.

ALMOND, Judge, (concurring).

While I agree with the majority opinion, I feel that some amplification is in order on the rather limited nature of the change which has been made in the law by this and other decisions involving common assignees.

At first reading, it would appear that the majority opinion would permit the assignee of these applications to obtain a very large number of patents as a result of Zajac's invention of a single new grease. If coworker Borg may obtain a patent on Zajac's grease with the addition of a prior art grease thickener, then it would appear that Borg or other coworkers could obtain individual patents for each prior art grease additive which they thought to add to Zajac's new grease.

The holding of this opinion is not nearly so sweeping, however, for nothing which we have said about terminal disclaimers has any effect upon the requirements for patentability set forth in 35 U.S.C. §§ 102 and 103. If an applicant cannot meet these requirements, then a terminal disclaimer is of no help to him whatever.

It is, therefore, clear that coworkers of Zajac cannot obtain an unlimited number of patents for the addition of obvious additives to the Zajac grease because the Zajac patent is prior art to them under section 102(e) as of Zajac's filing date. If a coworker cannot overcome that date under Rule 131, he cannot obtain a patent.

From what has been said, it will be recognized that a coworker of Zajac stands upon an equal footing, as to his right to obtain a patent, with a stranger to Zajac. Either one may patent an obvious modification of Zajac's invention only if he made his invention prior to Zajac's filing date. Prior to our decision in In re Bowers, 359 F.2d 886, 53 CCPA 1590, wherein we held that terminal disclaimers can be used in overcoming double patenting rejections in those cases involving commonly assigned applications, the coworker was at a definite disadvantage in respect to a stranger, for his application would be rejected for double patenting even if he could remove his coworker's patent under Rule 131. Whether or not a patent would issue in such cases depended, therefore, on the presence or absence of common identity of the assignees. Thus, basing patentability on the identity of the assignees effected no public benefit which I can discern.

The effect of our decision in *Bowers,* as well as in this case, is no more than to place a coworker in the same position as a stranger in regard to his right to obtain a patent.[1]

---

1. The coworker will, however, have a shorter patent term than would a stranger because of the terminal disclaimer.

The question of patentability of obvious modifications of inventions made by coworkers is now to be determined by reference to statutory standards, and not by reference to the identity of the assignee. It therefore seems to me that the impact of these decisions is to remove an anomaly from the law.

While it may be argued that the effect of these decisions will be to encourage delay in filing applications on basic inventions in order to allow coworkers time to discover obvious modifications which may also be patented, I do not feel this will become a substantial problem. The possible penalties which an applicant may suffer because of a charge of lack of diligence or of suppression of his invention provide an adequate safeguard against such delay.